**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ROBIN BOUEY,

    Plaintiff,

v.              Case No. 6:14-cv-48-Orl-37GJK

ORANGE COUNTY SERVICE UNIT,

    Defendant.

## ORDER

This cause is before the Court on the following:

1. Defendant's Motion for Summary Judgment (Doc. 80), filed January 15, 2015;

2. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. 85), filed February 17, 2015; and

3. Defendant's Reply to Plaintiff's Response to Its Motion for Summary Judgment (Doc. 89), filed March 24, 2015.

Upon consideration, the Court finds that the motion is due to be granted.

## BACKGROUND

In this action, brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), Plaintiff Robin Bouey claims that her former employer, Defendant Orange County Service Unit ("OCSU"), subjected her to age and race discrimination, retaliation, and a hostile work environment between 2011 and 2012. (*See* Doc. 19, ¶¶ 40–46.) OCSU is an organization that provides administrative support to two labor unions in the Orange

County School District: the Classroom Teachers Association ("CTA") and the Orange Education Support Professionals Association ("OESPA"). (Doc. 81-1, ¶¶ 4, 6; Doc. 85-1, ¶ 7.)

Defendant moves for summary judgment on, *inter alia*, the ground that it did not qualify as an "employer" under the ADEA or Title VII during the years relevant to Plaintiff's claims. (Docs. 80, 89.) Plaintiff opposes. (Doc. 85.) The matter is ripe for the Court's adjudication.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries its burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

**DISCUSSION**

As a threshold matter, Plaintiff appears to have abandoned her ADEA claims. (*See* Doc. 85.) In her response in opposition to Defendant's motion for summary judgment, Plaintiff does not refer to her ADEA claims at all, let alone address the arguments raised against them. (*See id.*) Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADEA claims pursuant to Rule 56(c)(1) (requiring a party asserting that summary judgment should not be granted to "support the assertion"), Local Rule 3.01(b) (requiring a party opposing relief requested in a motion to file a "memorandum of legal authority in opposition to the request"), and the Court's Case Management and Scheduling Order (*see* Doc. 29, pp. 6–7 (requiring a party opposing a motion for summary judgment to respond in writing "with citation to authorities in opposition to the relief requested")).[1]

As for Plaintiff's Title VII claims, their viability turns on the 42 U.S.C. § 2000e(b) "employee-numerosity requirement," which is designed to "spare very small businesses from Title VII liability." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006). Under the § 2000e(b) employee-numerosity requirement, organizations do not qualify as an

---

[1] Even if Plaintiff had filed the required opposition materials, Defendant would be entitled to summary judgment on Plaintiff's ADEA claims. As Defendant correctly notes in its motion for summary judgment (*see* Doc. 80, p. 11), 29 U.S.C. § 626(d)(1) requires an ADEA plaintiff to file her "charge alleging unlawful discrimination" with the Equal Employment Opportunity Commission prior to commencing any "civil action." The EEOC charge that Plaintiff filed prior to commencing this action makes no reference to age discrimination or to the ADEA; it references only race discrimination in violation of Title VII. (*See* Doc. 19-1, pp. 29–34.) Accordingly, Plaintiff failed to exhaust her administrative remedies prior to bringing her ADEA claims, rendering those claims non-cognizable.

Alternatively, the Court's analysis *infra* regarding Plaintiff's Title VII claims is equally applicable to her ADEA claims, requiring their dismissal. *See* 29 U.S.C. § 630(b) (applying to ADEA claims an employee-numerosity requirement that is identical to the requirement used in Title VII).

employer—and thus are not subject to the § 2000e-2(a) proscription against unlawful "[e]mployer practices"—unless they had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. §§ 2000e(b), 2000e-2(a). "The 'current' year referred to in the statute is the year in which the alleged discrimination occurred." *Dumas v. Town of Mount Vernon, Ala.*, 612 F.2d 974, 980 n.4 (5th Cir. 1980), *overruled on other grounds by Larkin v. Pullman-Standard Div., Pullman, Inc.*, 854 F.2d 1549, 1569 (11th Cir. 1988). "[O]nly individuals who receive compensation from an employer can be deemed 'employees' under the statute," *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998), and thus "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll," *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206 (1997). Employee numerosity is an element of a Title VII claim that the plaintiff bears the burden of proving. *Arbough*, 546 U.S. at 516.

Here, Defendant submits its 2010–2012 payroll records as evidence that Plaintiff cannot prove that it was an "employer" during the years relevant to Plaintiff's claim.[2] (*See* Docs. 81-3, 84.) The submission marks the second time that the Court has been called upon to review Defendant's 2010–2012 payroll. In *Vazquez v. Orange County Service Unit*, the Court comprehensively reviewed the same records and concluded that, far from employing the requisite fifteen people for the requisite twenty weeks, Defendant "*never* had more than fourteen employees on its payroll." *Vazquez v. Orange Cnty Servs.*

---

[2] Because Defendant's Title VII violations would have occurred between 2011 and 2012 (*see* Doc. 19, ¶¶ 17–41; Doc. 81-1, ¶ 7, 10–16; Doc. 85-1, ¶¶ 18–54), the years relevant to her claim are 2010, 2011, and 2012—that is, the "current or preceding calendar year[s]" to the violations. *See* 42 U.S.C. §§ 2000e(b); *Dumas*, 612 F.2d at 980 n.4.

*Unit*, No. 6:12-cv-1595-Orl-37DAB, 2014 WL 988756, at *3 (M.D. Fla. Mar. 13, 2014) (emphasis added), *aff'd sub nom. Vazquez v. Melamed*, No. 14-11642, 2015 WL 1344625, at *1 (11th Cir. Mar. 25, 2015) ("Viewed in the light most favorable to [Plaintiff], the evidence showed that OSCU never employed more than 14 employees during the relevant time period."). In fact, Defendant "averaged about eleven employees," *id.*, and "only had fourteen employees during a single two-week pay period in the three relevant years," *id.* at *3 n.4. After a thorough review, the Court reaches the same conclusion in this case. (*See* Docs. 81-3, 84.)

Plaintiff criticizes Defendant's payroll records as internally inconsistent, but she does not suggest that they can be read to qualify Defendant as an "employer" during the years relevant to her claim. (*See* Doc. 85, pp. 6–7.) Instead she argues—for the first time in this action—that Defendant, the CTA, and the OESPA are one integrated enterprise that should be treated as a "single employer" for Title VII purposes.[3] (*See id.* at 2–5 (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999)).) Based on that foundational argument, Plaintiff contends that the Court should aggregate the employees of those three organizations to reach the employee-numerosity requirement. (*Id.* at 5–7.)

Assuming strictly for the sake of argument that Defendant, the CTA, and the

---

[3] This argument is related to Plaintiff's broader concern—also raised for the first time in her opposition memorandum—that Defendant may never actually have been her employer. (*See* Doc. 85, pp. 1–2.) As a result of delving into various corporate- and fictitious-name registries, Plaintiff now suspects that she may always have been employed by the CTA—which, the Court notes, is not party to this action. (*Id.* at 2.) According to Plaintiff, "[t]his is a very complicated issue with no clear answer at this time." (*Id.*)

The Court declines to accompany Plaintiff down the rabbit hole. For over a year, Plaintiff has pressed this action against Defendant—not the CTA. Discovery is closed, as are the dispositive-motion briefings. (*See* Doc. 29, pp. 1–2.) Defendant is entitled to an adjudication of the claims raised against it.

OESPA should be treated as a single employer, Plaintiff nevertheless fails to create a genuine issue of material fact as to Defendant's employee numerosity. In support of her aggregate employee-numerosity theory, Plaintiff submits only three exhibits. Two of those exhibits are affidavits which Plaintiff cites without explanation or pinpoint citation. (*See id.* at 7 (citing Docs. 85-9, 85-14).) The Court rejects those affidavits outright as noncompliant with the directives of the Case Management and Scheduling Order.[4] (Doc. 29, p. 6 ("Both

---

[4] At the risk of encouraging this slipshod, all-too-frequent citation practice, the Court notes that it read both affidavits in their entirety and concluded that they do not create a genuine issue of material fact regarding Defendant's employee numerosity.

In the first affidavit, Defendant's former Office Manager Tori Roberson lists several people who she claims worked for Defendant, the CTA, or the OESPA at some point between 2010 and 2012. (*See* Doc. 85-9, ¶¶ 3–8.) Virtually all of the people Ms. Roberson lists are accounted for in Defendant's payroll records. (*Compare id.* ¶¶ 3–5, 7, *with* Docs. 81-3, 84.) For those who are not included, such as Raymond Bunker and Steven Conti, Ms. Roberson does not clarify which weeks they allegedly worked during the 2010–2012 timeframe, making it impossible to determine where they should be included in the fifteen-employees-for-twenty-weeks calculation. (*See* Doc. 85-9, ¶¶ 5–6.) The sole possible exception is Ms. Roberson's assertion that Defendant paid the acting CTA president continuously throughout the relevant time period. (*See id.* ¶ 8.) Read extremely generously, that assertion would add one employee to Defendant's payroll.

In the second affidavit, CTA Association Representative Leona Jacobson makes similarly unhelpful assertions. (*See* Doc. 85-14.) Jacobson asserts that CTA officers Donna Miller, Gayle Hodges, and Jennifer Summers "receive"—note the present tense—"$1000 per month from the CTA"; Jacobson does not, however, indicate which weeks, if any, those officers worked between 2010 and 2012. (*See id.* ¶ 4.) The closest Jacobson comes to identifying an employee that would count under Plaintiff's aggregation theory is her statement that she herself received $10 in compensation from the CTA at the end of 2010, 2011, and 2012 (*see id.* ¶ 9), but even that statement does not suffice; Title VII does not contemplate "purely gratuitous working relationships." *Llampallas,* 163 F.3d at 1244.

Again for the sake of argument, adding two additional employees (the CTA president and Jacobson herself) to those represented in Defendant's payroll for the entire 2010–2012 period would result in more than fifteen employees for only 18 weeks in 2010, eight weeks in 2011, and twelve weeks in 2012. (*See* Docs. 81-3, 84.) In short, there is no possible reading of the Roberson or Jacobson affidavits that would qualify Defendant as an employer during this action's relevant timeframe, even under the aggregation theory. *See* 42 U.S.C. § 2000e(b) (requiring "fifteen or more employees for each working day in each of twenty or more calendar weeks").

the movant and the party opposing summary judgment shall provide pinpoint citations to the pages and lines of the record supporting each material fact.").) The third exhibit is Plaintiff's own affidavit, in which she states:

> There were other employees who were working part-time that were not on the "Payroll." These individuals were either paid out of OCSU's checking account or CTA's checking account. I witnessed over 15 people working for over 20 weeks during 2010, 2011, and 2012 at the 120 Webster Ave. office location. These employees were either paid by CTA, OCSU, OESPA, or [the Florida Education Association].

(Doc. 85-1, ¶ 18.) In *Vazquez*, the U.S. Court of Appeals for the Eleventh Circuit rejected virtually identical testimony from the plaintiff in that action. *See* 2015 WL 1344625, at *1 ("Although Vazquez argued that OCSU actually employed more individuals than those listed on its payroll, he failed to produce any evidence in support of this claim. Vazquez's conclusory assertion that OCSU employed more than 15 employees cannot save the day."). Here, following the Eleventh Circuit's lead, the Court finds that Plaintiff's conclusory, self-serving, uncorroborated affidavit testimony does not create a genuine issue of material fact regarding Defendant's 2010–2012 employee numerosity. Without more—such as payroll records from the CTA or the OESPA—a reasonable jury could not return a verdict finding that Defendant was a Title VII "employer" within the relevant timeframe, even under Plaintiff's aggregation theory. Defendant is therefore entitled to summary judgment on Plaintiff's Title VII claims.[5] *See Anderson*, 477 U.S. at 248.

---

[5] For the sake of thoroughness, the Court notes that Plaintiff briefly argues, in conjunction with its single-employer theory, that Defendant is actually a "labor union with more than 15 members" and is therefore subject to Title VII pursuant to 42 U.S.C. § 2000e(e). (*See* Doc. 85, pp. 5–6.) This argument is unavailing. Regardless of whether Defendant qualifies as a "labor organization" under Title VII, Plaintiff expressly sued Defendant in its capacity as an employer. (*See* Doc. 19, ¶ 8.) Unlawful "employer practices" are different from unlawful "labor organization practices" under Title VII, *see* 42 U.S.C. § 2000e-2(a), (c), and Plaintiff has only ever invoked the former in this

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment (Doc. 80) is **GRANTED**.

2. All other pending motions are **DENIED AS MOOT**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff.

4. The Clerk is further **DIRECTED** to terminate all pending deadlines, cancel all pending conferences and hearings, and close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on April 24, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

action, (*see,* e.g., Doc. 19). The deadline for amending pleadings has passed (*see* Doc. 29, p. 1), and the Court is not inclined to permit Plaintiff to modify her claims at this late stage of the litigation in order to circumvent the employee-numerosity requirement. *See Yerdon v. Henry*, 91 F.3d 370, 377 (2d Cir. 1996) ("[A] labor organization with fewer than fifteen employees cannot be sued as an employer for discrimination under Title VII of the 1964 Civil Rights Act."). In any event, Plaintiff's failure to cite evidence of Defendant's purported membership numbers would be fatal to its labor union contention even if that contention were potentially viable. (*See* Doc. 85, pp. 5–6.)